[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13752
Non-Argument Calendar

_____

D.C. Docket No. 5:08-cv-00151-WTH-TBS

LARRY J. CALDWELL,

Petitioner-Appellant,

versus

ATTORNEY GENERAL, STATE OF FLORIDA,
SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 26, 2012)

Before TJOFLAT, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Larry Caldwell, a Florida prisoner proceeding pro se, appeals the district court's denial of his habeas petition under 28 U.S.C. § 2254. After review, we affirm.

## I. BACKGROUND

### A.    Evidence at Caldwell's Criminal Trial in State Court

In Florida in 2002, Caldwell was charged by information with burglary of a dwelling with battery, in violation of Fla. Stat. §§ 810.02(1), (2)(a), and 784.03, and sexual battery, in violation of Fla. Stat. § 794.011(5). In 2004, Caldwell proceeded to a jury trial on the information.

At Caldwell's trial, Cindy Lou Lutton, the victim, testified that in May 2000 she awoke to find a man standing in the doorway to her bedroom. The man proceeded to rape Lutton twice. Lutton did not see the man's face. Lutton did not recall his race, but believed that he was African American based on his manner of speech. Lutton believed that the man entered her apartment through an open window in her spare bedroom because there was sand on her desk and she had locked her doors. After the man left, Lutton drove to her parents' house, told them what happened, and her father called the police. Lutton did not know the man, she could recall no distinguishing characteristics, and she did not recognize Caldwell in court. On cross-examination, Lutton denied that she knew Caldwell.

2

Michelle Bently, a registered nurse, testified that she performed tests on Lutton at the hospital, and that a vaginal swab performed on Lutton was positive for sperm. Peter Ahern, a retired detective with the Leesburg Police Department, testified that when he went to Lutton's apartment, he noticed "scuff marks" on the exterior wall under one of the windows, which indicated that the window may have been the point of entry. Inside the apartment, Ahern noticed sand on the windowsill and underneath the window, which also indicated that the window was the point of entry.

Allen Carter, a Senior Detective with the Leesburg Police Department, testified that in his investigation of Lutton's apartment, he noticed "smudge marks" which appeared to be made by a bare foot on the exterior of the building underneath a window. Carter also noticed finger marks on the window ledge, and that it appeared that someone had pulled themselves up through the window. Carter believed that there had been a struggle in Lutton's bedroom because the bedroom was "messed up," specifically, items were knocked off the bed and a lamp and other items were knocked off an end table. Carter determined that there was a palm print on the inside of the windowsill in the spare bedroom, such that it appeared that someone had grabbed the inside of the windowsill. Carter also stated that there was a computer speaker on the desk below the windowsill that

3

was knocked over.  The desk was directly underneath the window, and if someone entered through the window, they would have landed on the desk.

Detective Carter stated that the case went "cold" until August 2002, when Carter was notified that a Florida crime lab had a DNA match it obtained through a Florida database of convicted felons, which led Carter to arrest Caldwell.  After Carter gave Caldwell Miranda[1] warnings, Caldwell told Carter that (1) Caldwell was living in a lodge across the street from Lutton's residence in 2000, (2) he was not involved in the burglary or any sexual crime, and (3) he did not know Lutton. Carter recalled that Caldwell was around 6 feet tall and weighed around 175 pounds at that time.  Carter then obtained and executed a search warrant for Caldwell's blood in order to compare it to the evidence from the crime scene and to ensure that there were no errors in the prior match.  Carter was present when Caldwell's blood was drawn in prison.  Carter then sealed the blood samples and had them transported to the Leesburg Police Department before they were sent to a Florida crime lab for comparison.

Emily Booth Varan testified that she worked in the Florida Department of Law Enforcement, Orlando Regional Crime Laboratory in the "serology/DNA section."  After being admitted as an expert witness, Varan stated that she

---

[1]Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).

prepared a report in March 2001 regarding the vaginal swab of Lutton submitted by the Leesburg Police Department. In July 2002, Varan learned that the DNA on the swab had matched a certain person. Varan requested that the Leesburg Police Department obtain another sample from that person to confirm the match. After receiving her requested sample, Varan determined that Caldwell's DNA matched the DNA from the sperm sample.

Sheala McBee, a latent fingerprint examiner with the Lake County Sheriff's Office, testified that she received latent fingerprints taken from the windowsill by Carter, and that the print on the windowsill matched Caldwell's fingerprints.

The state recalled Lutton, who testified that she never gave Caldwell permission to enter her residence and never gave him permission to engage in sexual intercourse with her.

After McBee's testimony, the state rested, and Caldwell moved for a judgment of acquittal. The state trial court denied Caldwell's motion. The state trial court confirmed that Caldwell intended to testify and had discussed his decision to testify with counsel.

Caldwell testified that he had "three or four" prior felony convictions, but then clarified that he had five prior felony convictions and five misdemeanor convictions. Caldwell confirmed that none of his prior convictions were

sexually-related crimes, that the crimes "involve[d] robbery," and that no people were hurt in the commission of those crimes. Caldwell stated that during the time he lived across the street from Lutton's apartment, he would see Lutton every day. Caldwell testified that Lutton had engaged in sexual intercourse with him and that he had loaned Lutton money in connection with their sexual relationship. Caldwell was inside Lutton's apartment before the incident to help her move furniture and to paint the spare bedroom. Caldwell stated that he never broke into Lutton's home, and that he never forced her to have sexual intercourse.

On cross-examination, Caldwell confirmed that he had five prior felony convictions. Two of those convictions were robberies, and Caldwell stated that robbery did not necessarily involve taking something by force, he did not "force anything," and he would not agree that robbery was a violent crime. Caldwell also had a prior conviction for burglary. Caldwell stated that his palm prints were in Lutton's spare bedroom from when he painted that room.

On redirect examination, Caldwell testified that he had never been skinny, and in 2000 he wore size 46 pants and "double X" shirts. Caldwell added that he did not know how to contact people who would have known him and Lutton because everyone who lived in the area had left.

After Caldwell rested, the state recalled Lutton, who stated that (1) she

6

never had her apartment painted after she moved in, (2) she did not know

Caldwell, (3) she had never seen or spoken to Caldwell before, and (4) she never

had sexual intercourse with Caldwell.

The jury found Caldwell guilty of both burglary of a dwelling with battery

and sexual battery.  The state court initially sentenced Caldwell to life

imprisonment on both counts.  Following a separate state court collateral hearing

that is not otherwise relevant to the present appeal, Caldwell was later

re-sentenced on the sexual battery count to a 15-year term of imprisonment, with

the term to run concurrently with his life sentence on the burglary with a battery

count.

**B.    Caldwell's Direct and Collateral Appeals in State Courts**

Caldwell appealed his convictions to Florida's Fifth District Court of

Appeal ("Fifth DCA").  Caldwell's appellate counsel filed an Anders[2] brief and

moved to withdraw from her representation of Caldwell.  Counsel raised one

potential issue in the brief, namely, whether the trial court erred in denying

Caldwell's motion for judgment of acquittal.  Caldwell filed a pro se brief arguing,

inter alia, that his convictions violated the Double Jeopardy Clause because the

battery relating to burglary was a lesser-included charge of sexual battery.  The

---

[2]Anders v. California, 386 U.S. 738, 87 S. Ct. 1396 (1967).

Fifth DCA affirmed Caldwell's conviction per curiam.

Caldwell then filed a motion for postconviction relief, pursuant to Florida Rule of Criminal Procedure 3.850, which, as amended, raised multiple grounds for relief. In pertinent part, Caldwell claimed that he received ineffective assistance of trial counsel because: (1) trial counsel Janice Orr's pretrial investigation was inadequate; (2) Orr incorrectly advised Caldwell regarding whether the nature of his prior convictions, rather than just their number, would be revealed to the jury if he testified; (3) Orr failed to object during trial to the double jeopardy issue Caldwell raised on direct appeal; (4) Orr failed to object to an improper jury instruction, which allowed the jury to presume Caldwell's specific intent; and (5) Orr failed to raise a chain-of-custody objection regarding the initial DNA sample Caldwell provided while incarcerated for a prior conviction. Caldwell requested an evidentiary hearing, that his convictions and sentences be vacated, or that he receive a new trial or re-sentencing.

At the Rule 3.850 evidentiary hearing, Caldwell was represented by new appointed counsel, and Caldwell, his trial counsel Orr, and Orr's investigator, Bob Bernhard, testified. After the evidentiary hearing, the state court denied Caldwell's Rule 3.850 motion. The state court first found that Orr's efforts to find Caldwell's proposed witnesses were reasonable, and thus, Caldwell's claim that he

received ineffective assistance of counsel based on Orr's failure to locate witnesses before trial was without merit.

With regard to Orr raising the nature of Caldwell's convictions at trial, the state 3.850 court found that Orr and Caldwell had discussed this tactic, as well as the "pros and cons" of Caldwell testifying, prior to Caldwell's trial.  By bringing up Caldwell's criminal history, Orr intended to show the jury that Caldwell did not have a history of violence and that sexual battery was not consistent with Caldwell's prior criminal convictions and his character.  Orr also testified, at the Rule 3.850 evidentiary hearing, that Caldwell had been adamant about testifying in his own defense and that her strategy was to "air their own dirty laundry" before the state had the opportunity to use it to impeach Caldwell.  Before Caldwell testified, the state trial court had questioned Caldwell on the record about his decision to testify.  The state 3.850 court noted that Orr's testimony was consistent with Caldwell's answers given to the state trial court at the time of trial.  The state 3.850 court pointed out that, in addition to Lutton's testimony, there was other testimony and physical evidence linking Caldwell to the crimes.  Accordingly, even assuming that Orr's trial strategy had been error, there was no reasonable probability that, but for this error in strategy, the result of Caldwell's trial would have been different.

9

The state 3.850 court also denied Caldwell's claim that his convictions violated double jeopardy because Florida courts had held that convictions for burglary of a dwelling with battery and for sexual battery did not violate double-jeopardy principles. The state court additionally denied all of Caldwell's other claims for relief.

Caldwell appealed the denial of his Rule 3.850 motion and filed a brief through counsel, arguing that Orr's strategy of raising the nature of his prior convictions at trial was "patently unreasonable" and ineffectively executed because Orr ultimately left the jury with the impression that Caldwell was capable of committing violent crimes and impugned his credibility. Caldwell added that, in determining whether the outcome might have been different, the state court should have considered, inter alia, Orr's efforts to locate his potential witnesses, where she made no attempt to contact Lutton's or Caldwell's landlords, and she and Bernhard did not visit the neighborhood where the witnesses previously lived. Caldwell concluded that a reasonable doubt existed as to the outcome of the trial, and thus, he was entitled to relief. The Fifth DCA affirmed per curiam the denial of Caldwell's Rule 3.850 motion.

## C.    Caldwell's Federal Habeas Petition

In April 2008, Caldwell filed the present pro se petition for a writ of habeas

10

corpus pursuant to 28 U.S.C. § 2254.  Caldwell's petition raised three grounds for relief, namely that (1) the state trial court violated his due process and equal protection rights by denying his motion for judgment of acquittal, because the state failed to prove every element of the charged offenses beyond a reasonable doubt; (2) his convictions relied on the same battery, and, thus, violated double jeopardy principles and his equal protection and due process rights; and (3) he was denied effective assistance of trial counsel.  As to his claim of ineffective assistance of counsel, Caldwell stated, inter alia, that counsel (1) failed to conduct an adequate pretrial investigation; (2) misadvised him about testifying and whether the jury would learn about the nature of his prior convictions; (3) failed to object to an improper jury instruction; and (4) failed to object to the admissibility of DNA evidence.

Following the state's response, the district court denied Caldwell's § 2254 petition.  As to Caldwell's first claim that the state failed to present sufficient evidence to prove each element of the charged offenses and that he was entitled to a judgment of acquittal, the district court found that Caldwell presented no evidence to rebut the state court's factual findings, and, thus, Caldwell failed to meet the standard of clear and convincing evidence to show with a "high probability" that the state court's factual findings were unreasonable.  The

11

substantial evidence presented at Caldwell's trial, along with the fact that Caldwell's conviction was affirmed per curiam on appeal, demonstrated that the evidence was sufficient to prove the elements of the charges, and Caldwell was not entitled to § 2254 relief as to that claim.

Turning to Caldwell's claim that his convictions violated the Double Jeopardy Clause, the district court noted that the crime of sexual battery included an element not included in first-degree burglary with battery, namely, sexual contact. The district court further noted that the Florida Supreme Court, applying the Blockburger[3] "same-elements" test, had concluded that charges of first-degree burglary with a battery and sexual battery could be separately and cumulatively punished. Accordingly, Caldwell's convictions did not violate the Double Jeopardy Clause, and he was not entitled to relief as to that claim.

As to Caldwell's ineffective-assistance claims, the district court first concluded that Orr did not fail to conduct an adequate pretrial investigation because Caldwell never gave the specific names of the alleged witnesses, and Caldwell testified at trial that the witnesses had moved and he did not know how to reach them. Given the vague nature of the information Caldwell provided, Orr's performance did not fall below an objective standard of reasonableness, and

---

[3]Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180 (1932).

12

Caldwell failed to demonstrate that he was denied effective assistance of trial counsel as to that claim.

Next, with regard to Caldwell's claim that he was misadvised on testifying, Orr testified at the evidentiary hearing that Caldwell was adamant about testifying. The DNA and fingerprint evidence tied Caldwell to the crime, and Caldwell's defense was that his sexual relationship with Lutton was consensual. Prior to trial, Orr discussed with Caldwell her strategy to raise the nature of Caldwell's prior convictions before the state did, and he agreed with that strategy. Because Caldwell's prior convictions would be exposed on cross-examination, Orr believed that the jury should know that the prior convictions were non-violent felonies, which the district court noted was a reasonable and common strategy. Caldwell failed to argue that Orr's strategy was unreasonable and that he suffered prejudice as a result. Accordingly, Caldwell failed to show that counsel's tactical decision was unreasonable or that the decision resulted in prejudice.

As to Caldwell's argument that Orr failed to object to improper jury instructions, the district court found that Orr did not provide inadequate assistance for failing to object to the presumption-of-intent jury instruction because the evidence showed Caldwell entered Lutton's home "stealthily and without permission," which was enough to conclude that he had the intent to commit both

13

battery and a burglary.  Therefore, Caldwell was not entitled to relief as to that claim.

As to Caldwell's claim that Orr unreasonably failed to object to the admissibility of DNA evidence, Caldwell failed to show that the chain of custody was an issue because, under Florida law, the state need not establish the chain of custody where the record does not demonstrate that there was a probability of evidence tampering.  Caldwell offered no grounds to believe that the evidence was tampered with such that Orr should have raised the chain-of-custody issue.  Moreover, the DNA was properly obtained under Florida law, and Caldwell did not present any evidence indicating otherwise.  Because the DNA evidence was admissible and there was no indication that the evidence was tampered with, the chain-of-custody issue would have been futile and Caldwell was not entitled to relief on that claim.

The district court granted Caldwell a certificate of appealability on his claims regarding whether (1) the state trial court erred in denying his motion for a judgment of acquittal; (2) his convictions violated double jeopardy; and (3) he was denied effective assistance of counsel based on his trial counsel's (a) failure to conduct an adequate pretrial investigation, (b) misadvising Caldwell about testifying, (c) failure to object to the jury instructions, and (d) failure to object to

14

the admissibility of the DNA evidence.

## II. DISCUSSION

On appeal, Caldwell first argues that the district court erred in denying his claim regarding the state trial court's denial of his motion for a judgment of acquittal. Caldwell contends that the only relevant evidence adduced against him at trial was the DNA evidence collected from the victim and matched to him, which, combined with evidence that tended to establish his innocence, did not sustain the state's burden of proof beyond a reasonable doubt. Caldwell concludes that it is highly probable that the district court's reliance on the state court's factual findings is erroneous, and that he has demonstrated a high probability that the state court's factual findings were unreasonable.

Caldwell next argues that his convictions violate the Double Jeopardy Clause because the sexual battery was the sole battery the state relied upon to form the basis for the conviction of burglary of a dwelling with battery.

Finally, Caldwell argues that he did not receive constitutionally effective assistance of counsel because his trial counsel: (1) failed to conduct an adequate pretrial investigation when she did not locate and call potential exculpatory witnesses; (2) misadvised him about testifying and the introduction of information about the number and nature of his prior convictions, which ruined his credibility

15

before the jury; and (3) failed to object to the admissibility of DNA evidence, as there was a high probability that the DNA evidence was tampered with, such that counsel was "constitutionally compelled" to object to the chain of custody.[4]

In considering a district court's denial of a § 2254 habeas petition, we review findings of fact for clear error and legal determinations de novo. Rhode v. Hall, 582 F.3d 1273, 1279 (11th Cir. 2009). Like the district court, we are also reviewing the state habeas court's decision. See Putman v. Head, 268 F.3d 1223, 1240 (11th Cir. 2001).

Under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court may not grant habeas relief on a state prisoner's claim that was denied on the merits in state court unless the state court decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d), a federal habeas court may grant a petitioner habeas corpus relief if the state court arrives at a conclusion

---

[4]On appeal, Caldwell has explicitly abandoned his claim regarding counsel's failure to object to the jury instruction.

16

opposite to that reached by the Supreme Court on a question of law or if the state court, on a set of materially indistinguishable facts, decides a case differently than the Supreme Court has. Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). Under the "unreasonable application" clause, a federal court may grant a petitioner habeas corpus relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. Id.

After reviewing the parties' briefs and the record, we conclude that none of Caldwell's claims has merit or warrants further discussion. Our exhaustive history of the state court proceedings readily shows that both the evidence and law supported the state courts' decisions. Caldwell has failed to demonstrate that any of his claims involves a state court decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d). Accordingly, we affirm the district court's denial of Caldwell's § 2254 petition.

**AFFIRMED.**